And move to our next case, which is United States of America v. Tobone and Smith. We'll take a moment to let the courtroom clear of those folks. I'm not sure. Wait a second. It's a little quieter. Okay, you want to get started? You may. Mark Furnish from Malcolm Smith. Good morning. Good morning. May it please the court. What business of the federal governments are a local political party's own internal affairs? Local governments are public entities that receive and administer federal funds, at least typically. And corporations, though regulated by the state... Well, they have a lot to say who's going to be on the ballot for mayor of New York City. That's kind of an important role, isn't it? Well, Your Honor, this is not an election fraud case, and the charge was not that the public was deceived of anybody's rights to honest services. The charge is expressly framed in the indictment, and that's what makes this case, among other factors, so novel. This is not a Margiotta case. That theory was expressly disavowed by the government, and what you have here is an allegation that Mr. Smith conspired or aided in embedding the defrauding of members of the Republican Party and their committees of the honest services of Mr. Tobone. Are you arguing that we should overrule not only Halloran, but also Margiotta? Is that what this argument is? Well, no, sir. Margiotta is not the theory that was devised here, and Halloran, this theory, the federalism argument, wasn't raised at all. Why don't you just wait one second until all these folks get a seat, and we'll restore that time to you. Sure. Mr. Nelson. Oh, it's Furnish. Nelson. I'm sorry. Mr. Furnish. Close enough, sir. Yeah, I'm trying. Thank you. Okay. Why don't you start where you left off? Well, so local governments are public entities that receive and administer federal funds, and that's not the entity that was allegedly defrauded here. And corporations, though regulated by the state, are private entities engaged in core economic activity, squarely both of these things within Congress's commerce authority. Local political parties, and that's the victim here, the alleged victim, are another story entirely. While also state-regulated, these are private entities engaged in core expressive activity that implicates and enjoys First Amendment protection. Then the state couldn't regulate this conduct either. No, no, sir. The state clearly can regulate it. Well, then I don't understand what's the First Amendment got to do with it. Well, because— The First Amendment binds the states as well as the federal government. Well, of course it binds the states, sir, but the law is very clear in New York and federally out of the Supreme Court and the New York Court of Appeals. And that's just the point, that the proper entities for regulating this sort of activity are, in the first instance, the party itself, and in the second instance, the state. This is an argument about who prosecutes the conduct, not whether it's prosecutable. You're not making a First Amendment argument. You're making a Tenth Amendment argument. I'm making a Tenth Amendment argument, but of course what informs the Tenth Amendment here is, among other possibilities, the prospect of these statutes being used for political mischief and motivated by improper purposes. So to that degree, of course the First Amendment plays a role, although I'm not contending that this particular prosecution suppressed First Amendment activity. But the fact that it's expressive political activity informs, certainly, the Tenth Amendment analysis. Well, I don't get it. Why? Wouldn't there be as much possibility for First Amendment mischief if the state brought the same prosecution? Well, sir, that's the reason I would surmise that the state has not used the statutes in issue here in the 50 years since they've been enacted. Yeah, I thought it may have more to do with the fact that the state legislature is permeated by corruption, and that may have something to do with why they're not pursuing something. That may well be or may not be the case, but with all respect, that's entirely irrelevant to the question of whether the conduct at issue here falls within the terms of the statute or the federal government's ability to prosecute. As spelled out in great detail in the briefs, if that's the case, there are numerous remedies at hand for the states to combat that crime. Why is it permissible to defraud the members of the Republican Party again? It's not a question of whether it's permissible or not. It's a question of who prosecutes that conduct, sir. Yeah, but the federal Congress has enacted a statute, the mail fraud statute, that talks about the use of the mails, a federal instrumentality, to engage or wire communications, an interstate instrumentality, to defraud people, right? Well, the United States Supreme Court repeatedly imposes limiting constructions on these statutes to guard against the dangers of over-criminalization, over-federalization, and vagueness, and I would just cite Skilling, I would cite McDonnell, and I would cite Allen. But not in a bribe and kickback situation like this case, right? Well... Does Skilling have any resonance in a case like this? None whatever, because there were no federal implications at issue in Skilling. That was a multinational corporation squarely engaged in interstate commerce. So that's your vagueness case is Skilling, but Skilling says this statute is not vague as to bribes and kickbacks. Well, but Skilling was an entirely different application. Skilling in no way said that every application to every bribe and kickback is constitutionally permissible. No, it said it wasn't vague, right? So... As applied to bribes and kickbacks, but here you have a situation where the predicate for the entire prosecution is a disused state statute, which indicates a de facto pattern of non-enforcement, that is a policy judgment made by New York prosecutors and the New York legislatures. It's no coincidence, respectfully, that these statutes have been on the books... Wait, wait, now let's think, like Colorado has made a decision about marijuana, but the Congress has made a different decision about marijuana. Does the fact that the state has chosen not to prosecute certain things or even to officially legalize them, let alone to have a law against it that you maintain is unenforced or under-enforced, does that prevent the federal government from enforcing federal laws? Not under Raich v. Gonzalez, but the DOJ has announced a policy that they're not going to do that. That's their discretion, that's not... but Raich says they have the discretion to do exactly the opposite. This is an entirely different situation. It's not a question of whether the conduct is legal or not. You have a statute saying it is not legal, but the state, for valid policy reasons of its own, has decided not to enforce it. Where do you get that? Those are valid policy reasons. It may be that state laxity in enforcing a political corruption statute is a reason in favor of federal prosecution. What's the policy reason that says the state should go on tolerating corruption? Well, that's for the state to figure out. But why should the... it may be, if a state wants to be corrupt, it may be they get to do that until such time as the federal government notices they're violating federal law. Not if the defendant has no notice that he could be prosecuted under this law. No notice? No notice. No notice. It's never been... He didn't know that bribery was a federal crime? No. No, sir. The only federal prosecution that would give him any remote inkling of that would be Margiotta. But he is not a political actor. But there are two state statutes, New York state statutes, that specifically prohibit this kind of conduct. Isn't that a pretty good expression of intent? Never been prosecuted, never been enforced, never been used against a party officer. Your argument really has quite an implication. If state corrupt people are sufficiently corrupt to persuade state prosecutors never to prosecute for corruption, then the state law becomes a nullity. No, no. There are other... That's your argument, isn't it? No, no. There are other state... Well, I thought that's what you just said. They've never prosecuted it, and therefore the feds can't. Under this statute, there are other state statutes that have been invoked to prosecute this conduct that they're not predicates to use the Travel Act. So misdemeanor statutes cited in the brief, other federal statutes, other state statutes that don't entail bribery per se and are not predicates under the Travel Act. Where do you get the conclusion that this pattern of non-enforcement is some sort of policy choice? It's a de facto policy choice. It goes to the... Wait, wait, wait, wait. In the late 1970s in New York City, there were virtually no prosecutions for auto theft. Auto theft was legal in the city of New York, effectively. Why? Because the city made a decision that they didn't care about cars? No, because they didn't have the resources in light of the other law enforcement priorities to prosecute that kind of case. They weren't able to uncover the criminals in these cases because they were too busy worrying about 2,000-plus murders a year. Why does the fact that a statute is under-enforced imply that there has been a high-level policy decision not to bring any cases? Do you have any evidence of cases where the state authorities were aware of this kind of behavior, had the evidence in hand, and said, oh, we have a policy of not prosecuting these cases? That's not my burden, sir. The Supreme Court cases are crystal clear. When a prosecution implicates core state prerogatives, and there's no question under the case law that the internal affairs of a political party are a core state prerogative, the government has to show that this was clearly Congress's intent to usurp a state police power. That's what this is. No matter how abhorrent the conduct may seem, you cannot endow the federal government with a police power that it simply does not possess. What is the case that you're relying on in the Supreme Court? Oh, Skilling. Skilling, if we just establish— Cleveland versus— Excuse me, your words are that Skilling has nothing to do with this case. Cleveland versus the United States, 2000 U.S. Supreme Court, McDonnell, all the cases that have come in the last five years— Bond! I mean, you cannot confer upon the federal government a police power that it does not possess. These are structural constraints intrinsic in the Constitution. Now, with that, because I see that I'm not making much headway with the panel on this, I'd like to move on to McDonnell briefly. Well, your time has expired, Mr. French, but you have reserved two minutes. Would you like to use it now, or— No, I'll come back. Okay, thank you. Mr. Nelson. May it please the Court, my name is Eric Nelson. I represent on appeal Vincent Tabone, the former vice chairman of the Queen's Republican Party. Good morning, Your Honors. May I proceed? Yes. I submit to this Court that the question at hand—and I will deal with the honest services fraud aspect of the conviction. My position on the Travel Act has been established in the brief and in the reply brief. However, with the Court's permission, I would like to move on to the issue with the Honest Services Act. Once again, I submit to the Court whether or not, under United States v. Margiotto, a private party, namely Vincent Tabone, who did not immerse himself in government, whether he owed a fiduciary obligation or fiduciary duty to either the citizenry of New York or to the Queen's Republican Party. And I submit to the Court, and with all due respect to Your Honor Judge Lynch in terms of your decision in United States v. Halloran, I submit under the facts of this particular case, Mr. Tabone did not owe a fiduciary obligation to either the citizens of New York or the Queen's Republican Party. You don't owe any particular respect to Halloran, but we do. So the question is, are you saying that there is something that distinguishes Mr. Tabone's case from the situations resolved in Halloran on this front? I do, Your Honor. And what is that? The difference is that Mr. Halloran and the others involved in this case, or at least some of the other defendants, were public officials. Yes, but the breach of fiduciary duty that they aided and abetted was found to be a breach of fiduciary duty by the various Republican Party officials who granted the Wilson-Pakula certificate duty owed to the members of the Republican Party. So why is Mr. Tabone in a different position than – in fact, I suspect that in some degree he was one of the people who was part of that litigation, right? Halloran didn't owe the duty. Halloran participated in bribes to the people who did owe the duty, who were the Republican Party officials who include Tabone. So what's different here? The difference is, Your Honor, is if we look at Mr. Tabone's role and we look at the New York primary law under the election law, it is not Mr. Tabone's decision, nor would it be the decision of any of the party leaders. How about we look at his testimony, the recording of what he said? I'm the chief operating officer of the party. I run the Queens County Republican Party. Nobody else runs the party. I run the party. I am the party. Do you dispute that he said that? Your Honor, that is the evidence at trial. I do not dispute that, but I submit to the court that the fact that one is boasting or someone who may have believed as to the fact that his role was more important than it actually was, I submit that's – He was vice chair of the Queens County Republican Party, though. There's no dispute of that, right? There's no dispute about that, Your Honor. My position on this is the fact that under the New York primary law and under the New York election law, first, if a person is given, for example, in this case, Mr. Smith was given the Wilson Pakula by three out of the five county chairmen in New York City, then he would still have to submit, I believe it's 7,500 petitions or signatures on a petition within 37 days of the fact that he is assuming that he's approved. In this particular case, it would ultimately be up to the Queens County Executive Committee. In response to Your Honor, notwithstanding – I mean, 7,500 signatures is not a real big deal in New York City, I would think. I agree, but it would ultimately first, Your Honor, would be the approval by the Executive Committee, and then once that takes place – I'm sorry. Isn't that exactly the argument that was made in Halloran? That's what I'm having trouble understanding. I thought that was exactly the argument that Halloran made, was that no one individual controlled the Wilson Pakula, and so it was only a potential advance, and then we had the whole argument about what may means in the statute. What you just articulated is exactly the argument that counsel for Halloran articulated in the last case. In Judge Karras' decision, if I may respond to that, Judge Karras, in his decision, talks about a breach of loyalty. And in terms of the breach of loyalty, I submit to the court that in everyday life, any of us may have a loyalty. For example, we may have loyalty to our bank, or we may be a preferred customer or client in the bank, and we therefore have loyalty. Yeah, but what if we're the president of the bank? Your Honor – Wouldn't that make a difference? I mean, sure, if you're a customer, you have no fiduciary duty to stick with the bank out of loyalty. But if you are an officer of the bank, you owe something to the shareholders. You do, Your Honor, but you're in a different position. I would not equate Mr. Tabone to being the president of the bank because ultimately the president of the bank is the head of the bank. Well, but an official of the Republican Party, are you saying to me that an official of the Republican Party owes under state or federal law no fiduciary duty to the members of the party to exercise his judgment for the benefit of the party rather than to line his own pockets? That's the argument you're making, that he does not owe such a duty. I'm not talking about the lining of his own pockets, which obviously occurred in this particular case, both with the undercover president and on the audio tape. But the principle is, I take it, that the leadership of a political party is elected by the members of the party in order to further the interests of the party, not their personal interests. Is that wrong? Am I wrong to think that? No, you're not wrong to think that, Your Honor. However, I submit in this case that the powers that Mr. Tabone claims that he had, and which may appear on paper to believe that what he had, and we all realize in the New York City system that ultimately the decision of the head of the party will carry a lot of weight. However, the question that still remains is whether or not that creates a fiduciary obligation. And I submit to you, to all of you, that the fact that there's a duty of loyalty to the party, and I'm not arguing volunteer. The cases are established on that, as set forth in Judge Karas's decision. I am submitting to the court that under the facts of this particular case, and Judge Karas in his decision refers to Margiotta, Vincent Tabone is no Mr. Margiotta or Joseph Margiotta, who essentially had the control of every aspect of the Nassau County government. We only know that because the jury found it, and here the jury evidently found the same thing about Mr. Tabone. I agree with you completely that the fact that he says, I'm the king here, doesn't mean he is, but it's evidence that the jury can consider in deciding whether he is in that kind of position, isn't it? Yes, but also, Your Honor, I submit that the Court of Appeals, the Third Circuit, since Margiotta decided United States versus Murphy, very, very similarly factual scenario as Margiotta. And even under the facts of that particular case, the Third Circuit held that a party official, who concededly, in Murphy, still immersed himself in the businesses and with various businesses and kickbacks, would still owe no fiduciary obligation under the Honor Services Act to the citizens. In fact, in Murphy, the Court cites two other cases, Panarella, United States versus Panarella, and United States versus Antico, which in those situations talk about a public official. So the question, Your Honors, is whether or not it's an obligation to the citizens, which all the cases have held, that there's an obligation to the citizens or just to the Republican Party. In this particular case, I submit that there is an obligation to the citizens by a public official. Again, Mr. Tabone was not a Mr. Margiotta or a Mr. Murphy. Thank you, Mr. Nelson. Your time has expired. Thank you, Judge. Thank you, Your Honors. Reserve some time. Would you like to use it now? Please. I'll use it afterwards. Thank you. Government? May it please the Court, my name is Hagan Scott, and I represent the government in this appeal. I believe that the Honor Services Fraud and Travel Act convictions here are squarely controlled by Halloran. As the Court, I think, briefly observed, Mr. Tabone is not distinguishable from Mr. Halloran. If anything, he was more deeply implicated in the scheme than Mr. Halloran, and the jury was entitled to find that he owed a fiduciary duty, something he, in fact, conceded at several points in the trial court. With respect to Mr. Smith, again, all the statutory interpretation questions, the factual sufficiency questions are squarely controlled by Halloran. I take Mr. Smith's only exception to Halloran being essentially on vagueness and federalism grounds, but those arguments are controlled by other cases. Vagueness challenges to Section 1346 have been repeatedly rejected in cases such as Skilling, and again in McDonald when it recently came out. They have been rejected by narrowing the statute, but Mr. Smith's conduct falls squarely within that statute. It is a bribe and kickback scheme. He did agree to trade an official act, and therefore he can't claim any vagueness concerns there. Moreover, his vagueness concerns really are controlled by Halloran, because Halloran said, especially with respect to the Travel Act, Sections 245 and 250 prohibit the conduct constituting the Wilson-Pakula scheme under any plausible reading of those statutes, and neither the case law nor Halloran's constitutional concerns persuade us otherwise. So this Court has already said the state statutes here which trigger the Travel Act are sufficiently clear that there is no vagueness concern. The same is true in the honest service of fraud context. Because this conduct was so clearly illegal, there cannot be a vagueness concern. And that same clarity of the statutory law here really controls the federalism challenge. As the Court is aware, the Tenth Amendment can sort of come into play in two ways. It could prohibit the enactment of a law entirely if it's outside Congress's powers, but the appellants have correctly conceded here that the relevant statutes here are validly enacted pursuant to Congress's commerce power, so that's out. That leaves only the possibility of a narrowing construction of these statutes that would somehow limit federal power. But all the statutes here are either state statutes, the state bribery statutes, where you wouldn't limit or construe narrowly to constrict federal power, or they've already been interpreted by courts with an eye to making sure they're properly limited, and yet Smith's conduct still falls squarely within them. The only other thing I'll turn to very briefly... What about this argument that if New York's not prosecuting itself for violations of these New York statutes, the federal government shouldn't have a role in this? I think it's a federalism argument, but what's your response to that? I think it's twofold, Your Honor. First, I believe that that argument was raised and rejected in Halloran on the reasoning that absent any evidence, the state actually identified a Wilson-Pakula scheme and said, we don't want to prosecute this. It's not really evidence that the state has any policy to not prosecuting this sort of thing. It simply hasn't noticed it. I think as Judge Lynch pointed out, these are generally applicable statutes that are implicated here, for example, the Honest Services Fraud Statute, and there's good reason to think that the federal government would be in a unique position to detect violations of these laws, as we see in this case, the Wilson-Pakula scheme. How are you in a unique position? Well, largely by virtue of... Do you have access to information that state prosecutors would not have? Like in Connecticut, there's a problem because there's no grand jury for state prosecutors, so a lot of the corruption prosecutions are done by the U.S. Attorney's Office because they can use the grand jury to help them do that. Is there some particular thing you can point to that shows that you are in a special place? I think so, Your Honor. Even leaving aside the systemic issues that Judge Lynch, I think, averred to as to will to prosecute, the federal government has significantly greater resources, particularly for things like developing cooperating witnesses. Uncovering the scheme took a very lengthy investigation where the government only had access to a federal cooperating witness who was able to essentially approach Mr. Smith. It took a lot of actual cash. Over $100,000 were paid in bribes. Even the FBI was starting to worry about whether it had enough money to pay the bribes. State law enforcement has less resources. It often is also more constrained because it does, by virtue of the police power, have to prosecute sort of day-to-day violations, and it often doesn't have the resources to do the kind of year-long investigation with consensual wiretaps, with a cooperating witness who had been developed over the years, with an FBI agent who could be on call at all times to answer his phone and pretend to be an out-of-state real estate developer, which was itself important that we could bring someone essentially from outside the state. Mr. Smith would have known who was a big player in the real estate market in New York. It was useful to this investigation that the FBI agent, referred to as Raj, could say, oh, I'm from the South, I'm big in real estate there, you wouldn't have heard of me, but I want to pay you some bribes to get into the New York market. So the federal government did bring a lot of tools to bear here that the state prosecution couldn't necessarily bring to bear. And because it did so to prosecute what are very plain violations of the law, both state and federal law, there's really no room for a federalism objection. Could you address the Hobbs Act account against Mr. Smith? Because it seems to me that the jury instruction that was given here is pretty much exactly the one that the Supreme Court in McDonald's said shouldn't be given, or had exactly at any rate the flaws that the Supreme Court articulated in the instructions in McDonald's. I don't believe that's so, Your Honor. Here the appellants would have to show plain error, but I actually don't think they even get to the first step of plain error, which is error. The instructions between McDonald and this case are going to be somewhat different because the facts were different. McDonald was a case that was solely about meetings. The government was firmly arguing these meetings are official acts, and also it was a case in which the- But you argued, you were the prosecutor who gave the rebuttal summation, or someone else? Someone else, Your Honor, but I'm familiar with rebuttals. The prosecutor who gave the rebuttal summation at any rate told the jury that they could rely solely on the meeting if they had any other problems with the case, right? I don't believe so. He did say that the meeting could be all the evidence you needed, but that is exactly what McDonald approves. McDonald says expressly, you can use a meeting of evidence. So at one point when he's laying out, after covering some other piece of evidence, he says, and look, Smith also agreed to set up this meeting. That's the evidence you need. That's the evidence you need to show you that he agreed to perform the official act. But again and again, the government argued that the official act here was provision of state funds, and that is a classic official act, even with a McDonald. McDonald says that allocating grant money is an official act. That seems to me to solve the sufficiency of the evidence problem or any sufficiency of the evidence argument. But in terms of the jury instruction, the Supreme Court said what was wrong with the McDonald instruction, among other things, was it did not highlight that a meeting alone is not enough. And I appreciate your point about the meeting may be evidence of something else. Maybe, although I think that would be a little peculiar, it could be sufficient evidence standing alone of something else. But that's a very subtle distinction, and if it's not called to the jury's attention, that they are not permitted to rely on setting up the meeting as the sole basis for conviction. Then I'm having trouble understanding, in light of the summation, how we can parse it as lawyers, but how a jury could be expected to intuit that what they were being told was not that if all that happened was setting up a meeting, he's guilty, but actually the argument was if you could rely on that evidence alone to infer that there was something else that would be sufficient. That's a lot to expect of a jury if the judge doesn't tell them about that distinction. So I think in this case, Your Honor, because it was so consistently argued from start to finish that the official act was the allocation of state funds, and it was never argued that the official act was getting them this meeting. And if I could sort of walk through that, and you can start with the indictment, which doesn't say anything about a meeting. It only says help to establish state funds. And then you can start in the opening. I'm just sort of going through transcript sites here. At page 25, I think this is the first time the government has opened and came to the Hobbs Act count. It says what happened here is that Roger Stern asked for $500,000 in transportation money, no mention of a meeting. At page 33 of the transcript, again, the government's opening. This is about a meeting. Then I'll skip forward to the summation. The official act, this is in the government's summation, is just Smith agreeing to give Roger and Stern transportation money. That's at 1829. Even the defense knew that the meeting wasn't the issue. This is the attorney for Mr. Smith making his claim, which the argument below was, well, there's not enough evidence that the money was for the corrupt act Smith performed. So asking Carlucci to take a meeting, and it's true that it doesn't matter whether Senator Smith went to Carlucci for the project or didn't go to Carlucci for the project, but what matters is that there's no evidence that any criminal agreement in connection with this project had been forged. So the defense is saying it's not about a meeting. But the defense also argued that the conduct was innocent because all Smith did was send a letter and ask Carlucci to take a meeting. That was an argument that was made. It may not have been their primary argument, and they had a lot of other evidence to deal with, I understand that. So, of course, they made other arguments about that evidence. But their whole goal was to narrow it down to a meeting and then say, well, a meeting is no big deal. And then in the rebuttal, we hear the government say all the knowledge he needs is knowing they expected him to help get state money. So Smith used his office. He used his office to arrange a meeting between Stern and Carlucci. Right. And in that context where he's saying all the knowledge you need, and I won't keep going to the transcript, I do just want to point out that at 2202, when this rebuttal on this subject ends, again, it ends on this subject, here's how you know he, Smith, is doing it. This is at 2202. That's how you know he knew that he was expected to do it. In the context of the case, that made a huge amount of sense. The way this whole meeting and this business with Carlucci came up, and you can see this most clearly in Government Exhibit 122, which is a meeting between Smith, Raj, and Stern, is Stern essentially asks Smith, you know, can you help me with my project? Can you help me get road funding? And Smith's response is, it's doable. We're probably going to have to do it through Carlucci. Not I'll get you a meeting with Carlucci. Not that's all you get. I'm going to get you this money. We're going to do it through Carlucci. And so it's evidence in that sense when Smith says, look, I'm going to do this corrupt thing for you. Let me tell you how I'm going to do it. Probably through Carlucci. And then he sets up a meeting with Carlucci. That's direct evidence that he did exactly what he said he'd do. So, you know, if I tell you that I'm going to sell you drugs, here's how I'm going to do it. I'm going to give you a Ziploc bag. And then the government's next evidence is handing you a Ziploc bag. It's great evidence that you're fulfilling your bargain. It's not evidence that a Ziploc bag is drugs. It's the same sort of evidence here. And that's really from start to finish. If I could say one more word about the jury instructions, why I do think they're consistent with McDonnell. The particular wording, McDonnell, is partly triggered by the parties incorporation of 201 and the facts of that case. But the Supreme Court's summary of sort of what instructions overall need to convey here, and I think this is really at 2372, the Supreme Court's concern was two things, that an official act be specific and focused and that it be a formal exercise of government power. That's in the Supreme Court's opinion when it's sort of summing up its analysis. What the district court said here was that the official act shown must be a specific exercise of Smith's official powers. That's at 2319. And if you look at the jury instructions actually given in McDonnell, they contain none of that. The jury's instructions there are essentially official acts means something in his course of duties. It can be routine. There is no moment in the McDonnell jury instructions where the court said it needs to be specific, it needs to be an exercise of official powers, and that's why these jury instructions are very different and not erroneous under McDonnell. Do we know in McDonnell how the insufficiency of meetings alone was preserved as a claim? Yes, Your Honor. There was extensive direct argument in the district court. The parties very expressly sought those sort of cautions that meetings alone are not enough, that it actually has to be some sort of formal exercise of power. It was a request to charge that it was not enough. Correct, Your Honor. And that's why this case is under plain error and that case was not, which is one of the many differences between the two cases. Thank you. Thank you, Your Honor. Mr. French, you have some time. Well, let's not think that this issue about McDonnell just came out of thin air. Mr. Shargell, who tried the case, made a Rule 29 motion at the end of the case, and this is before McDonnell was in the pipeline and even a glimmer. So the battleground in the case was the meetings. And Mr. Shargell's oral Rule 29 motion at the end of the case was this is just politics as usual. All he's doing is setting up meetings, and that's not enough. And if it is enough, he said to Judge Karras, you're going to have to build more jails if that's enough. And Judge Karras, in evidentiary arguments, because Mr. Shargell wanted to introduce certain evidence about the meetings that was precluded, Judge Karras said, quote, I know how crucial this is to your defense. And he also observed that in connection with these meetings, all I see, Judge Karras said, is him, meaning Smith, setting up the meetings. I don't see him attempting to pressure or exert pressure or anything like that. So this is not something that came out of thin air. Now, with respect to the— Is there any reference to the Hobbs Act count in particular in the sentencing? Well, now Your Honor understands one of the many reasons why I have to bring the other challenges. Yes, right, right. Okay. So, I mean, that doesn't—the sentences are all concurrent. I'm not looking for a lawyer's victory here. Yeah, no, I understand, of course. So let's review how the charge is legally and factually erroneous under McDonnell, okay? First of all, no definition of official action whatsoever, which is something that exactly the Supreme Court pointed out in McDonnell. In fact, throughout this case, the government, contrary to my friend's assertion, argued over and over again that they did not even have to prove that Smith agreed to take an official action. Over and over again. It's a battle line in the case throughout the summation. All they have to prove, the government says, is that Mr. Smith knew that Raj and Stern thought that he would commit an official action, whatever that is. Plainly wrong in light of McDonnell, because McDonnell, although the parties did there agree to incorporate the 201 definitions, the Court said quite pointedly that this incorporation was necessary to resolve the vagueness, federalism, and over-criminalization concerns that McDonnell had raised. So this just— Was there a request to charge— There was not. There was not. There was not. —nor an objection after the charge. Well, there was not, because it was pre-McDonnell. But I would submit that under either a plain error or a modified plain error standard, especially, especially, sir, when you factor in Mr. Shargell's Rule 29 motion, and this was a key defense theme throughout the case, that all he was doing was setting up meetings, and this was just politics as usual. I'm not saying the objection to the charge was preserved, but it's clearly in play. It did not come out of left field. And Judge Lynch has hit on the key portion of the summation, but that's not all. On 2202, as my friend cited, the prosecutor actually affirmatively equates setting up the meetings with official action. Now, there's a little bit more evidence in the record, but not much. The meeting was the prime evidence to show the existence of an agreement, and the government consistently elided this point throughout the trial. They sort of glossed over the fact that he needed to agree to commit official acts, and the primary circumstantial evidence from which one could infer the existence of this necessary agreement was the arranging of the meetings. He talked about— But McDonnell does say that you can make that inference, that the meeting, the agreement to take a meeting, it's quite explicit in McDonnell that there's a difference between saying the organizing the meeting is the official act and using the taking of the meeting or asking for the meeting as evidence of a larger plot. That is true. First of all, they did say that it was an official act. Second, as Your Honor pointed out, that's an exceedingly subtle distinction. And third of all, nothing in McDonnell remotely suggests that if this is the key, if not the sole piece of evidence, and it's pretty close, that that would suffice to sustain the conviction. But when you put together—when you put together, sir, it's not just one of these things. When you put together the errant instruction, the very questionable and not willfully questionable arguments that the government made in summation that turned out to be not entirely accurate in light of McDonnell, and then the nature of the proof, which primarily focused on the meeting, you have a real problem under the case law. Don't you have to show us—I appreciate you're emphasizing the meetings in order to get—to show error. But in order to get plain error, don't you have to persuade us that a properly instructed jury, one that said meetings aren't enough, would likely not have convicted with the bunny evidence before them? Isn't that your burden? A reasonable possibility or a reasonable probability, that is my burden. And when you break down what the evidence is that they emphasized in the summation, the meeting was the prime part of it. They also said, as my friend pointed out— You think the meeting to a— The arranging— —was more important to the jury than the money? No, with respect to—that's the quid. On the quo side, the meeting, what Smith agreed to do was clearly the most important evidence to show that he entered into a corrupt agreement. I mean, the money is the quid. This is on the quo side. So I can expound on what the rest of the evidence they emphasized in the summation is if the court wants to hear it. As my friend said, there was an attribution to Smith on the take that he would work with Carlucci to make it happen. But in the next breath, he says, I can show him where in the budget and how to do it. There's no suggestion in that statement, no necessary suggestion, and Judge Caproni pointed this— made a similar point in her order for bail for Silver. There's no suggestion that he was going to put the thumb on the scale with respect to whether that money should be allocated, or at least a reasonable jury could so infer that all he was talking about is how to do it if Carlucci chose to so do it. And then the only other piece of evidence that they cited in the summation was that later on March 21st, Smith said, well, I can find an off-budget way to do it, and there's really very little explanation of what it's about. So those are the only three pieces of evidence that they cited, and he placed clear reliance on the meeting. So a properly instructed jury, sir, there's at least a reasonable possibility that they would not have found him guilty of the Hobbs Act charge. And I won't make a spillover argument about that, but— Thank you, Mr. Furnish. Your time has expired. We're going to hear from Mr. Nelson on rebuttal, too. Thank you. Thank you again. As I stated during the course of my remarks a few moments ago, in order to find a fiduciary obligation, there must be misconduct. Now, assuming that the tapes and the transcripts from the trial showed a misconduct on Mr. DeBone's behalf, but there also must be reliance and damages to the party. And I submit to the court that the executive committee has oversight over any proposed selection through a Wilson-Percoula by Mr. DeBone or other members or other party members in New York City, for they must certify that selection. Now, we could all take our understanding of how New York law works. And, in fact, I believe it was yourself, Your Honor, Judge Lynch, that talked about a corrupt New York State legislature. However, the checks that are in place do not create a fiduciary obligation. What goes on in the real world in terms of a fiduciary obligation, I submit, is different from what went on and what the courts have required, for example, the Murphy decision. And, again, I'm aware of Your Honor's decision in Halloran. Your Honor did not cite Halloran in the decision at all. I submit that that's significant because when one compares Margiotta from the facts of this case, they're completely different, and that is the basis of my arguments before Your Honors. Thank you. Thank you. We'll reserve decision on this case.